**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEBASTIAN MEINKING,<br><br>Plaintiff,<br><br>vs.<br><br>CHEMOCENTRYX, INC., THOMAS J. SCHALL, THOMAS A. EDWARDS, JOSEPH M. FECZKO, JENNIFER L. HERRON, RITA I. JAIN, SUSAN M. KANAYA, GEOFFREY M. PARKER, JAMES L. TYREE, and DAVID E. WHEADON,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Sebastian Meinking ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against ChemoCentryx, Inc. ("ChemoCentryx" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Amgen, Inc. ("Parent") through merger vehicle

Carnation Merger Sub, Inc. ("Merger Sub, and collectively with "Parent," "Amgen") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an August 3, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Amgen will acquire all of the remaining outstanding shares of ChemoCentryx's common stock at a price of $52.00 per share in cash. As a result, ChemoCentryx will become an indirect wholly-owned subsidiary of Amgen.

3. Thereafter, on August 31, 2022, ChemoCentryx filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to convince Plaintiff to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for ChemoCentryx, provided by ChemoCentryx

management to the Board and the Board's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Goldman Sachs, if any, and provide to the Company and the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7. Plaintiff is a citizen of Ohio and, at all times relevant hereto, has been a ChemoCentryx stockholder.

8. Defendant ChemoCentryx a biopharmaceutical company, focuses on the development and commercialization of new medications for inflammatory disorders, autoimmune diseases, and cancer in the United States. ChemoCentryx is incorporated under the laws of the State of Delaware and has its principal place of business at 835 Industrial Road, Suite 600, San Carlos, CA. Shares of ChemoCentryx common stock are traded on the Nasdaq Stock Exchange under the symbol "CCXI."

9. Defendant Thomas J. Schall ("Schall") has been a Director of the Company at all relevant times. Schall also serves as the Company's Chief Executive Officer ("CEO") and President.

10. Defendant Thomas A. Edwards ("Edwards") has been a director of the Company at all relevant times.

11. Defendant Joseph M. Feczko ("Feczko") has been a director of the Company at all relevant times.

12. Defendant Jennifer L. Herron ("Herron") has been a director of the Company at all relevant times.

13. Defendant Rita I. Jain ("Jain") has been a director of the Company at all relevant times.

14. Defendant Susan M. Kanaya ("Kanaya") has been a director of the Company at all relevant times.

15. Defendant Geoffrey M. Parker ("Parker") has been a director of the Company at all relevant times.

16. Defendant James L. Tyree ("Tyree") has been a director of the Company at all relevant times.

17. Defendant David E. Wheadon ("Chainey") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 9 - 17 are collectively referred to as the "Individual Defendants."

19. Non-Party Parent discovers, develops, manufactures, and delivers human therapeutics worldwide. Parent is headquartered in Thousand Oaks, CA and its shares are traded on the NasdaqGS Stock Exchange under the symbol "AMGN."

20. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because ChemoCentryx maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

24. ChemoCentryx a biopharmaceutical company, focuses on the development and commercialization of new medications for inflammatory disorders, autoimmune diseases, and cancer in the United States. It offers TAVNEOS (avacopan), an orally administered selective C5aR inhibitor for the treatment of adult patients with severe active anti-neutrophil cytoplasmic autoantibody-associated vasculitis. The Company also develops TAVNEOS for the treatment of patients with severe hidradenitis suppurativa, as well as patients with complement 3 glomerulopathy, and lupus nephritis. In addition, it develops CCX559, an orally administered inhibitor for programmed death protein 1/programmed death-ligand 1 for the treatment of various cancers; and CCX507, an orally administered inhibitor of the chemokine receptor known as CCR9, which has completed Phase I clinical trial for the treatment of inflammatory bowel disease. Further, the company has early-stage drug candidates that targets Th17 driven diseases and CCR6. ChemoCentryx, Inc. was incorporated in 1996 and is headquartered in San Carlos, California.

25. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the May 5, 2022 press release announcing its 2022 Q1 financial results, the Company highlighted such milestones as a five-fold increase in net sales of TAVNEOS as well as the release of positive Phase I clinical trial data on their Pharmacokinetics drug.

26. Speaking on these positive results, CEO Defendant Schall commented on the Company's positive financial results as follows, Strong performance was evident in the first quarter," ……. "The traction to-date is clear: all key performance indicators are up and Q1 revenue exceeded our model. A five-fold increase in net sales occurred versus Q4 2021; there was a nearly

1  three-fold increase in unique prescribers, and a greater than three-fold increase of patients on drug this quarter. Further, referrals are coming from a growing number of first time as well as repeat prescribers. In my view, all of this shows that we are executing on plan – and we believe this is just the start for TAVNEOS."

27. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by ChemoCentryx. Clearly, based upon these positive financial results and outlook, the Company is likely to have future success.

28. Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused ChemoCentryx to enter into the Proposed Transaction without providing requisite information to ChemoCentryx stockholders such as Plaintiff.

*The Flawed Sales Process*

29. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30. Notably, the Preliminary Proxy Statement fails to disclose whether a committee of disinterested directors was formed to oversee and evaluate the Proposed Transaction, and if so, what powers the committee had in doing so, including whether the committee had the power to veto a transaction that is not in the best interest of common shareholders.

31. Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Amgen, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

33. On August 4, 2022, ChemoCentryx and Amgen issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **THOUSAND OAKS, Calif. and SAN CARLOS, Calif., Aug. 4, 2022** /PRNewswire/ -- Amgen (NASDAQ: AMGN) and ChemoCentryx, Inc., (NASDAQ: CCXI), a biopharmaceutical company focused on orally administered therapeutics to treat autoimmune diseases, inflammatory disorders and cancer, today announced that the companies have entered into a definitive agreement under which Amgen will acquire ChemoCentryx for $52 per share in cash, representing an enterprise value of approximately $3.7 billion.
>
> "The acquisition of ChemoCentryx represents a compelling opportunity for Amgen to add to our decades-long leadership in inflammation and nephrology with TAVNEOS, a transformative, first-in-class treatment for ANCA-associated vasculitis," said Robert A. Bradway, chairman and chief executive officer at Amgen. "We are excited to join in the TAVNEOS launch and help many more patients with this serious and sometimes life-threatening disease for which there remains significant unmet medical need. We also look forward to welcoming the highly skilled team from ChemoCentryx that shares our passion for serving patients suffering from serious diseases."
>
> "A fierce commitment to improving human lives is the bond that unites Amgen and ChemoCentryx today," said Thomas J. Schall, Ph.D., president and chief executive officer of ChemoCentryx. "Last year, after 25 years of proud history, we at CCXI delivered on our founding promise with the approval of TAVNEOS for patients with anti-neutrophil cytoplasmic autoantibody-associated vasculitis (ANCA-associated vasculitis). It is an honor to now join Amgen's great mission, and together begin a bright new era bringing landscape-shaping medicines like TAVNEOS to those who will benefit most."
>
> TAVNEOS is an orally administered selective complement component 5a receptor inhibitor. It was approved by the U.S. Food and Drug Administration in October 2021 as an adjunctive treatment for adult patients with severe active ANCA-associated vasculitis, specifically granulomatosis with polyangiitis (GPA) and microscopic polyangiitis (MPA) (the two main forms of ANCA-associated vasculitis), in combination with standard therapy.
>
> ANCA-associated vasculitis is an umbrella term for a group of multi-system autoimmune diseases with small vessel inflammation. Inflamed vessels may rupture or become occluded giving rise to a broad array of clinical symptoms and signs related to a systemic inflammatory response which may result in profound injury and dysfunction in the kidneys, lungs and other organs.

Amgen is a leader in inflammation and nephrology. The company's inflammation portfolio includes Otezla®, ENBREL®, TEZSPIRE®, AMGEVITA™ (a biosimilar to HUMIRA®), RIABNI™ (a biosimilar to Rituxan®), and AVSOLA® (a biosimilar to REMICADE®). Amgen's pipeline includes four innovative Phase 2 inflammation medicines – efavaleukin alpha for systemic lupus erythematosus and ulcerative colitis, ordesekimab for celiac disease, rocatinlimab for atopic dermatitis and rozibafusap alfa for systemic lupus erythematosus – as well as ABP 654, a biosimilar to STELARA® that is in Phase 3 development. Amgen's nephrology portfolio includes EPOGEN®, Aranesp®, Parsabiv® and Sensipar®.

U.S. sales of TAVNEOS in the first quarter of 2022, the first full quarter of sales, were $5.4 million. TAVNEOS is also approved in major markets outside the U.S., including the European Union and Japan. Vifor Fresenius Medical Care Renal Pharma Ltd. will retain exclusive rights to commercialize TAVNEOS outside the U.S., except in Japan where Kissei Pharmaceutical Co., Ltd. holds commercialization rights and Canada where Otsuka Canada Pharmaceutical holds commercialization rights.

In addition to TAVNEOS, ChemoCentryx has three early-stage drug candidates that target chemoattractant receptors in other inflammatory diseases and an oral checkpoint inhibitor for cancer.

The transaction has been unanimously approved by each company's board of directors. The transaction is subject to ChemoCentryx stockholder approval, regulatory approvals and other customary closing conditions, and is expected to close in the fourth quarter of 2022.

Amgen management will comment further on the ChemoCentryx transaction on its Q2 earnings call today.

PJT Partners acted as financial advisor to Amgen and Wachtell, Lipton, Rosen & Katz is serving as its legal advisor. Goldman Sachs & Co. LLC acted as financial advisor to ChemoCentryx, and Latham & Watkins LLP is serving as its legal advisor.

*Potential Conflicts of Interest*

34.     The breakdown of the benefits of the deal indicate that ChemoCentryx insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of ChemoCentryx.

35. Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Name and Address of Beneficial Owner | Number of Shares Beneficially Owned | Percentage of Shares Beneficially Owned |
|---|---|---|
| **Named Executive Officers and Directors** | | |
| Thomas J. Schall, Ph.D. | 4,402,020 | 6.0% |
| Tausif Butt(7) | 72,120 | * |
| Rita I. Jain, M.D. | 66,792 | * |
| Susan M. Kanaya | 600,210 | * |
| Markus J. Cappel, Ph.D. | 191,905 | * |
| Thomas A. Edwards | 176,337 | * |
| Joseph M. Feczko, M.D. | 193,658 | * |
| Jennifer L. Herron | 17,237 | * |
| Geoffrey M. Parker | 188,294 | * |
| James L. Tyree | 54,669 | * |
| David E. Wheadon, M.D. | — | * |
| All directors and executive officers as a group (11 persons) | 5,970,968 | 8.0% |

36. Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. The Preliminary Proxy Statement accounts for these awards as follows:

| Name | Vested Stock Options (#) | Value of Vested Stock Options ($)(1) | Unvested Stock Options (#) | Value of Unvested Stock Options ($) | Unvested RSUs/ Restricted Stock (#) | Value of Unvested RSUs/ Restricted Stock ($) | Total Value of Outstanding Stock Options and Unvested RSUs/Restricted Stock ($) |
|---|---|---|---|---|---|---|---|
| ***Non-Employee Directors*** | | | | | | | |
| Thomas A. Edwards | 30,143 | 1,206,822 | 8,342 | 247,007 | 15,723 | 817,596 | 2,271,424 |
| Joseph M. Feczko, M.D. | 42,643 | 1,682,572 | 8,342 | 247,007 | 15,723 | 817,596 | 2,747,174 |
| Jennifer L. Herron | — | — | — | — | 17,237 | 896,324 | 896,324 |
| Geoffrey M. Parker | 42,643 | 1,682,572 | 8,342 | 247,007 | 15,723 | 817,596 | 2,747,174 |
| James L. Tyree | 42,643 | 1,682,572 | 8,342 | 247,007 | 15,723 | 817,596 | 2,747,174 |
| David E. Wheadon, M.D. | — | — | — | — | 22,274 | 1,158,248 | 1,158,248 |

| Name | Vested Stock | Value of Vested Stock | Unvested Stock | Value of Unvested Stock | Unvested RSUs (#) | Value of Unvested | Total Value of Outstanding Stock Options |
|---|---|---|---|---|---|---|---|

|  | Options (#) | Options ($)(1) | Options (#) | Options ($) |  | RSUs ($) | and Unvested RSUs ($) |
|---|---|---|---|---|---|---|---|
| **Executive Officers** | | | | | | | |
| Thomas J. Schall, Ph.D. | 1,972,218 | 85,315,278 | 241,882 | 5,388,779 | 239,934 | 12,476,568 | 103,180,625 |
| Tausif Butt | 21,875 | 849,406 | 105,325 | 3,220,118 | 41,400 | 2,152,800 | 6,222,324 |
| Rita I. Jain, M.D. | 16,791 | 685,293 | 59,700 | 1,810,899 | 11,600 | 603,200 | 3,099,392 |
| Markus J. Cappel, Ph.D. | 94,753 | 3,642,303 | 64,395 | 1,469,217 | 61,467 | 3,196,284 | 8,307,805 |
| Susan M. Kanaya | 362,457 | 15,694,004 | 91,114 | 2,049,719 | 90,968 | 4,730,336 | 22,474,059 |

37. In addition, certain employment agreements with certain ChemoCentryx executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($) | Equity ($) | Perquisites / Benefits ($) | Total ($) |
|---|---|---|---|---|
| Thomas J. Schall, Ph.D. | 2,304,525 | 17,865,347 | 44,161 | 20,214,033 |
| Tausif Butt | 1,091,350 | 5,372,918 | 44,215 | 6,508,483 |
| Rita I. Jain, M.D. | 967,706 | 2,414,099 | 994 | 3,382,799 |
| Markus J. Cappel, Ph.D. | 1,159,928 | 4,665,501 | 21,014 | 5,846,443 |
| Susan M. Kanaya | 1,455,233 | 6,780,055 | 62,421 | 8,297,709 |

38. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. Thus, while the Proposed Transaction is not in the best interests of ChemoCentryx, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

40. On August 31, 2022, the ChemoCentryx Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

41. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

a. Whether a committee of disinterested directors was formed in order to evaluate the Proposed transaction and if so, what powers it had in doing so;

b. Whether the confidentiality agreements entered into by the Company with Amgen differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Amgen, would fall away; and

d. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning ChemoCentryx's Financial Projections*

42. The Preliminary Proxy Statement fails to provide material information concerning financial projections for ChemoCentryx provided by ChemoCentryx management to the Board

and Goldman Sachs and relied upon by Goldman Sachs in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Goldman Sachs reviewed, "certain internal financial analyses and forecasts for the Company, including assumed probabilities associated with certain future events contemplated by such forecasts and certain analyses related to the expected utilization by the Company" prepared by Company management.

44. The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that ChemoCentryx management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

45. With regard to the *Unaudited Prospective Financial Information* prepared by ChemoCentryx, the Preliminary Proxy Statement fails to disclose material line items, including the following:

    a. With respect to the projections which assume estimates of net revenue and EBIT with respect to the commercialization of TAVNEOS (including in indications other than ANCA-associated vasculitis) and ChemoCentryx's CCX559 and CCX507 pipeline drug candidates for the third and fourth quarter of fiscal year 2022 and for fiscal years 2023 through 2044, the Preliminary Proxy Statement fails to disclose the following:

        i. EBIT, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: gross profit, interest expenses, taxes, and ChemoCentryx's total operating expenses; and

        ii. Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: tax expense, depreciation and amortization, capital expenditures, and changes in net working capital.

    b. With respect to the Projections that include the commercialization of TAVNEOS for ANCA-associated vasculitis for the third and fourth quarter of fiscal year 2022 and for fiscal years 2023 through 2044, as well as estimates of unlevered free cash flow with respect to the commercialization of TAVNEOS for ANCA-associated vasculitis for the same period, as approved by ChemoCentryx, the Preliminary Proxy Statement fails to disclose the following:

        i. EBIT, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: gross profit, interest expenses, taxes, and ChemoCentryx's total operating expenses; and

        ii. Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: tax expense, depreciation and amortization, capital expenditures, and changes in net working capital.

46. The Preliminary Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various cases of projections rely.

47. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Goldman

1  Sachs's financial analyses, or make an informed decision whether to vote in favor of the Proposed
2  Transaction.  As such, the Board has violated the Exchange Act by failing to include such
3  information in the Preliminary Proxy Statement.

*<u>Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs</u>*

50. In the Preliminary Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51. With respect to the *Illustrative Discounted Cash Flow Analysis—TAVNEOS AAV Only Cash Flows*, the Preliminary Proxy Statement fails to disclose:

   a. The inputs, metrics, and assumptions used to determine discount rates ranging from 11.5% to 13.5%;
   b. The Company's weighted average cost of capital;
   c. The range of terminal values calculated;
   d. The inputs, metrics, and assumptions used to determine perpetuity growth rates ranging from 20.0% to 0%;
   e. The estimated benefits of ChemoCentryx's net operating losses;
   f. ChemoCentryx's target capital structure weightings;
   g. The Company's cost of long-term debt;
   h. The future applicable marginal cash tax rate for the Company;
   i. The assumed rate of inflation;
   j. The beta for the Company;
   k. The range of illustrative enterprise values for ChemoCentryx;
   l. The range of illustrative equity values derived for the Company; and
   m. The number of fully diluted outstanding shares of Company stock.

52. With respect to the *Illustrative Discounted Cash Flow Analysis—Aggregate Cash Flows*, the Preliminary Proxy Statement fails to disclose:

   a. The inputs, metrics, and assumptions used to determine discount rates ranging from 11.5% to 13.5%;
   b. The Company's weighted average cost of capital;
   c. The range of terminal values calculated;
   d. The inputs, metrics, and assumptions used to determine perpetuity growth rates ranging from 20.0% to 0%;
   e. The terminal year estimate of the Aggregate Cash Flows;
   f. ChemoCentryx's target capital structure weightings;
   g. The Company's cost of long-term debt;
   h. The after-tax yield on permanent excess cash;
   i. The future applicable marginal cash tax rate for the Company;
   j. The beta for the Company;
   k. The assumed rate of inflation;
   l. The range of illustrative enterprise values for ChemoCentryx;
   m. The range of illustrative equity values derived for the Company; and
   n. The number of fully diluted outstanding shares of Company stock.

53. With respect to the *Premia Analysis—Undisturbed Closing Stock Price*, the Preliminary Proxy Statement fails to disclose:

   a. The value of each transaction compared;
   b. The specific date on which each transaction closed; and
   c. The inputs, metrics, and assumptions used to determine a reference range of illustrative premiums of 47% to 92%.

54. With respect to the *Premia Analysis—52-Week High Closing Stock Price*, the Preliminary Proxy Statement fails to disclose:

   a. The value of each transaction compared;

  b. The specific date on which each transaction closed; and

  c. The inputs, metrics, and assumptions used to determine a reference range of illustrative premiums of negative 1% to 31%.

55. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public ChemoCentryx stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

57. Plaintiff repeats all previous allegations as if set forth in full herein.

58. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

64. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

65. Plaintiff repeats all previous allegations as if set forth in full herein.

66. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

67. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of ChemoCentryx' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading.

As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

69. The Individual Defendants acted as controlling persons of ChemoCentryx within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause ChemoCentryx to engage in the wrongful conduct complained of herein. The Individual Defendants controlled ChemoCentryx and all of its employees. As alleged above, ChemoCentryx is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 2, 2022            **BRODSKY & SMITH**

By: */s/ Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*